CLERK'S OFFICE COPY

# United States Court of Appeals for the Federal Circuit

**RECEIVED**

JUN 1 3 2005

AT 8:30 _____ M
WILLIAM T. WALSH
CLERK

04-1493    *Civil 96-5541 (MLC)*

PRINCETON BIOCHEMICALS, INC.,

Plaintiff-Appellant,

v.

BECKMAN COULTER, INC.,

Defendant-Appellee.

William G. Todd, Greenberg Traurig, LLP, of New York, New York, argued for plaintiff-appellant. With him on the brief was Scott J. Bornstein.

Joseph R. Re, Knobbe, Martens, Olson & Bear, LLP, of Irvine, California, argued for defendant-appellee. With him on the brief were Darrell L. Olson, Douglas G. Muehlhauser, and Christy G. Lea.

Appealed from: United States District Court for the District of New Jersey

Judge Mary L. Cooper

# United States Court of Appeals for the Federal Circuit

04-1493

PRINCETON BIOCHEMICALS, INC.,

Plaintiff-Appellant,

v.

BECKMAN COULTER, INC.,

Defendant-Appellee.

---

DECIDED:  June 9, 2005

---

Before RADER, SCHALL, and GAJARSA, Circuit Judges.

RADER, Circuit Judge.

In the United States District Court for the District of New Jersey, a jury found in favor of Plaintiff-Appellant Princeton Biochemicals, Inc. (Princeton), rejecting the claims of Defendant-Appellee Beckman Coulter, Inc. (Beckman) that Princeton's U.S. Patent No. 5,045,172 (the '172 patent) is invalid by reason of obviousness and prior invention, and finding that Beckman infringed the '172 patent.  On all three questions, however, the district court found the jury's verdict unsupported by substantial evidence and granted judgment as a matter of law (JMOL) in favor of Beckman.  Princeton Biochemicals, Inc. v. Beckman Coulter, Inc., No. 96-5541 (MLC), 2004 WL 1398227 (D.N.J. June 17, 2004).  Because the district court properly concluded that substantial evidence did not support the jury's verdict of nonobviousness, this court affirms.

I.

Dr. Norberto Guzman is the inventor of the '172 patent, which he assigned to Princeton. The '172 patent claims a capillary electrophoresis device. Electrophoresis is one method available for the investigation of biological materials, and is an efficient procedure for the separation and detection of proteins and other matter. '172 patent, col. 1, ll. 16-20. Electrophoretic separation, one species of electrophoresis, relies on the differential speeds of the migration of differently charged particles in an electric field. Id. at col. 1, ll. 21-23. Capillary electrophoresis is one type of electrophoretic separation. Id. at col. 1, ll. 17-20. As the '172 patent describes,

> [I]t is generally known that a material, containing mixtures of substances to be analyzed, can be passed along a capillary tube and through a detector under the influence of an applied voltage. The applied voltage charges the substances and the charges on the substances determine their spacing and their speed of passage along the capillary tube.

Id. at col. 2, ll. 32-38. Capillary tubes, generally made of quartz, range in lengths of roughly 10 to 100 centimeters and 25-200 microns in diameter. Id. at col. 1, ll. 50-58. Due to the dimensions of a tube, capillary electrophoresis requires only a minute sample size to efficiently separate and identify the components of a solution.

Claim 32 of the '172 patent claims a specific capillary electrophoresis device:

> Capillary electrophoresis apparatus comprising a capillary tube of the type which can be electrically charged, said capillary tube having first and second ends,

first means at said first end of said capillary tube providing a source of buffer solution and a source of a sample substance to be analyzed,

second means coupled to said apparatus for applying electrical potential across said capillary tube whereby a sample flows through said capillary tube and past said detector,

said first means includes a rotatable table carrying a plurality of sample cups and <u>a holder for holding an end of said capillary tube in operative relation with one of the said cups</u>, said cups containing either buffer solution or a sample to be analyzed, and

<u>said capillary tube is in the form of a coil of glass tubing [secured to a support member].</u>*

Id. at col. 23, II. 30-47 (emphases added).  The parties stipulated that claim 32

contains eight elements, as follows:

Capillary electrophoresis apparatus comprising:
(1) a capillary tube of the type which can be electrically charged,
(2) said capillary tube having first and second ends,
(3) first means at said first end of said capillary tube providing a source of buffer solution and a source of sample substance to be analyzed,
(4) second means coupled to said apparatus for applying electrical potential across said capillary tube whereby a sample flows through said capillary tube and past said detector,
(5) said first means includes a rotatable table carrying a plurality of sample cups and
(6) a holder for holding an end of said capillary tube in operative relation with one of the said cups, said cups containing either buffer solution or a sample to be analyzed, and
(7) said capillary tube is in the form of a coil of glass tubing
(8) secured to a support member.

Id.

---

* The words "secured to a support member" are not present in the final, published version of the '172 patent.  The parties stipulated at trial that this was a printing error only.  Those words appear in claim 32 as issued.

04-1493                                3

Beckman manufactures and sells the P/ACE 2000 and 5000 Series capillary electrophoresis devices ("the accused devices" or "the P/ACE devices"). Beckman contends a prototype device, named OTEP II, contained all the elements recited in claim 32.  Princeton does not contest that Beckman made OTEP II by February 1, 1987.  That date, therefore, is the relevant reduction-to-practice date for the P/ACE devices.  Beckman began selling P/ACE devices as early as 1993.

Guzman filed the application for the '172 patent on November 14, 1988. Thus, the critical date for evaluating 35 U.S.C. § 102(b) prior art references is November 14, 1987.  Several references, published before November 14, 1987, discussed the electrophoretic concepts embodied in claim 32 of the '172 patent. Two particular references stand out.   The first, an article by Honda dated September 1987, describes ways to introduce automatically different samples into a capillary electrophoresis device.  Susumu Honda, et. al., "Evaluation of an Automatic Siphonic Sampler for Capillary Zone Electrophoresis," Int'l J. on Chromatography, Electrophoresis and Related Methods.  The second, a Ph.D. thesis by Lukacs, was published in 1983 by a graduate student of Dr. James W. Jorgenson, an expert who testified on behalf of Beckman.  The Lukacs thesis discloses the coiling of capillary tubes during electrophoretic work.  Coiling a capillary tube lengthens the tubing without increasing the size of the electrophoretic device.   A longer tube provides better separation and identification of analytes.

On November 21, 1996, Princeton filed suit, alleging that the P/ACE devices infringed claim 32 of the '172 patent. Beckman denied infringement and sought a declaration of invalidity on grounds of obviousness and prior invention. Following a grant of summary judgment of noninfringement, Princeton appealed. In an unpublished opinion, this court reversed, holding that the district court had improperly construed the sixth element in claim 32. Princeton Biochemicals, Inc. v. Beckman Instruments, Inc., 1999 WL 641233, at *6 (Fed. Cir. 1999) ("The proper interpretation of the holder limitation is that 'in operative relation' encompasses both vertical movement of the holder as well as vertical movement of the sample cups and the table.").

On remand, the district court conducted a nine-day trial followed by motions for JMOL from both parties. The district court reserved judgment until after the jury verdict. The jury decided in favor of Princeton on all issues. Specifically, the jury found that Princeton proved by a preponderance of the evidence that Beckman's devices infringed claim 32 of the '172 patent; that Beckman did not prove by clear and convincing evidence that claim 32 of the patent was invalid for obviousness; and finally, that Beckman did not prove "by clear and convincing evidence that claim 32 is invalid because the invention described in that claim was made by Beckman before it was made by Princeton." Beckman timely renewed its JMOL motion and moved alternatively for a new trial.

In due course, the district court issued a carefully composed, 194-page opinion that set aside the jury's verdict and found all counts in favor of Beckman.

Princeton Biochemicals, Inc., 2004 WL 1398227. The district court also granted Beckman's motion for a new trial. Id. at *91. Princeton timely appealed to this court. This court has jurisdiction under 28 U.S.C. § 1295(a)(1).

II.

"The grant or denial of a motion for judgment as a matter of law is a procedural issue not unique to patent law, reviewed under the law of the regional circuit in which the appeal from the district court would usually lie." Summit Tech., Inc. v. Nidek Co., 363 F.3d 1219, 1223 (Fed. Cir. 2004). Under the law of the Third Circuit, review of a district court's ruling on JMOL is plenary. Shellenberger v. Summit Bancorp, Inc., 318 F.3d 183, 186 (3rd Cir. 2003). The party requesting the JMOL must show that substantial evidence did not support the jury's findings, where substantial evidence is "such relevant evidence from the record taken as a whole as might be accepted by a reasonable mind as adequate to support the finding under review." Tex. Instruments Inc. v. Cypress Semiconductor Corp., 90 F.3d 1558, 1563 (Fed. Cir. 1996). This court must also consider all the evidence before the jury and draw all reasonable inferences in favor of the prevailing party on that issue, i.e., the non-movant. Richardson-Vicks Inc. v. Upjohn Co., 122 F.3d 1476, 1479 (Fed. Cir. 1997). Regarding the obviousness issue in this case, this court must determine whether the jury had substantial evidence upon which to conclude that Beckman met its burden of showing invalidity by clear and convincing evidence.

This court also reviews the legal standards that the jury applied in reaching its verdict to determine whether they were correct as a matter of law.

04-1493                                6

Markman v. Westview Instruments, Inc., 52 F.3d 967, 975 (Fed. Cir. 1995) (en banc), aff'd, 517 U.S. 370, 134 L. Ed. 2d 577, 116 S. Ct. 1384 (1996). When reviewing a jury's verdict on obviousness the court reviews the "conclusions on obviousness, a question of law, without deference, and the underlying findings of fact, whether explicit or implicit within the verdict, for substantial evidence." LNP Eng'g Plastics, Inc. v. Miller Waste Mills, Inc., 275 F.3d 1347, 1353 (Fed. Cir. 2001). Specifically, the jury is presumed to have "resolved the underlying factual disputes in favor of the verdict winner and [this court leaves] those presumed findings undisturbed if they are supported by substantial evidence". Jurgens v. McKasy, 927 F.2d 1552, 1557 (Fed. Cir. 1991).

### III.

Section 103 of title 35 of the United States Code states:

> A patent may not be obtained . . . if the differences between the subject matter sought to be patented and the prior art are such that the subject matter as a whole would have been obvious at the time the invention was made to a person having ordinary skill in the art to which said subject matter pertains.

35 U.S.C. § 103(a) (2000). The legal conclusion, that a claim is obvious within § 103(a), depends on at least four underlying factual issues: (1) the scope and content of the prior art; (2) differences between the prior art and the claims at issue; (3) the level of ordinary skill in the pertinent art; and (4) evaluation of any relevant secondary considerations. See Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 17 (1966). Analyzing the record support for those factors for Beckman's Rule 50(b) motion, the trial court concluded that claim 32 was obvious. Thus, the court granted Beckman's motion for JMOL, set aside the jury

04-1493                                7

verdict rejecting the obviousness challenge, and entered judgment invalidating claim 32.

There is no dispute that the references introduced at trial disclosed every element in claim 32. Guzman admitted this in his testimony at trial. Thus, aside from the relevance of the asserted references, the only disputed issue at trial, and asserted on appeal, was whether there was motivation to combine the elements already present in the prior art. As this court outlined in Ruiz v. A.B. Chance Co., 357 F.3d 1270, 1275 (Fed. Cir. 2004), in making the assessment of differences between the prior art and the claimed subject matter, section 103 specifically requires consideration of the claimed invention "as a whole." Inventions typically are new combinations of existing principles or features. Envtl. Designs, Ltd. v. Union Oil Co., 713 F.2d 693, 698 (Fed. Cir. 1983) (noting that "virtually all [inventions] are combinations of old elements"). The "as a whole" instruction in title 35 prevents evaluation of the invention part by part. Ruiz, 357 F.3d at 1275. Without this important requirement, an obviousness assessment might successfully break an invention into its component parts, then find a prior art reference corresponding to each component. Id. This line of reasoning would import hindsight into the obviousness determination by using the invention as a roadmap to find its prior art components. Further, this improper method would discount the value of combining various existing features or principles in a new way to achieve a new result - often the essence of invention. Id.

Contrary to this reasoning, section 103 requires assessment of the invention as a whole. Id. This "as a whole" assessment of the invention requires a showing that an artisan of ordinary skill in the art at the time of invention, confronted by the same problems as the inventor and with no knowledge of the claimed invention, would have selected the various elements from the prior art and combined them in the claimed manner. Id. In other words, section 103 requires some suggestion or motivation, before the invention itself, to make the new combination. See In re Rouffet, 149 F.3d 1350, 1355-56 (Fed. Cir. 1998).

In setting aside the jury's verdict and holding claim 32 obvious, the district court systematically and vigilantly considered the relevant prior art references and testimony of both parties. The Honda article relates to claim 32's first six elements and describes an automated capillary electrophoresis device with a rotatable table carrying a plurality of sample cups. Princeton does not contest that the Honda article discloses elements one through six. Therefore, at the time of Princeton's claim 32 invention, the prior art had disclosed elements one through six.

With respect to the seventh element, the district court found that the Lukacs thesis disclosed the construction and use of a coiled glass capillary in a capillary electrophoresis apparatus. Princeton Biochemicals, Inc., 2004 WL 1398227, at *40. Additionally, Dr. Jorgenson testified about Ms. Lukacs's work with coiled capillaries based on his own observations in the laboratory with Ms. Lukacs. He noted that they coiled glass capillaries that were two to three meters and longer. Id. at *24. In light of the Lukacs thesis, Dr. Guzman conceded at

trial that he was not the first to coil a capillary in an electrophoresis device. Id. at
*40. Therefore, at the time of Princeton's claim 32 invention, element 7 was also
known in the prior art.

Element 8 of claim 32 recites the requirement that the capillary tube of
claim 32, in the form of glass tubing, must be "secured to a support member." At
trial, Dr. Guzman testified that he did not invent "securing capillary tubes or any
portion thereof to support members" and did not deny that this element was "old"
or that it did not "add" anything new to the claim. From this, the district court
correctly concluded that element 8 was known in the prior art. Id. at *40.
Furthermore, in its brief to this court, Princeton conceded that elements one
through eight were separately known in the prior art.

As discussed, simply identifying all of the elements in a claim in the prior
art does not render a claim obvious. Ruiz, 357 F.3d at 1275. Instead section
103 requires some suggestion or motivation in the prior art to make the new
combination. Rouffet, 149 F.3d at 1355-56. A suggestion or motivation to modify
prior art teachings may appear in the content of the public prior art, in the nature
of the problem addressed by the invention, or even in the knowledge of one of
ordinary skill in the art. SIBIA Neurosciences, Inc. v. Cadus Pharm. Corp., 225
F.3d 1349, 1356 (Fed. Cir. 2000).

Dr. Jorgenson testified that the motivation to combine these references
was found in the knowledge of those skilled in the art at the time of Guzman's
invention.   See SIBIA Neurosciences, Inc., 225 F.3d at 1356 (stating that

motivation, suggestion or reason to combine items of prior art may come from the knowledge of one of ordinary skill in the art). As Jorgenson explained:

> [T]he combination is obvious. Every one of the individual ideas is obvious. And the combination is absolutely obvious. Everybody in all of the related fields in all of the related technologies is doing those kinds of things . . . . The entire package taken together is obvious.

Id. Princeton offered no evidence to rebut Dr. Jorgenson's testimony.

Dr. Jorgenson's testimony on motivation to combine is unrebutted. Moreover, it is consistent with the prior art introduced at trial. The only additions to the Honda prior art in this invention were coiling the capillaries (Lukacs prior art) and supporting the coils (concededly prior art). Both of those simple additions appear in other prior art references. Thus, Dr. Jorgenson testified, without any rebutting evidence in the record, that the suggestion to coil and secure the capillaries in the Honda device was within the knowledge of one of skill in the art. In In re Lee, this court expressed skepticism about invoking the knowledge of a skilled artisan to supply the motivation to combine on a scanty record. 277 F.3d 1338, 1343-44 (Fed. Cir. 2002) ("This factual question of motivation . . . could not be resolved on subjective belief and unknown authority."). Dr. Jorgenson supplied detailed analysis of the prior art and the reasons that one of ordinary skill would possess knowledge and motivation to combine these simple elements.

In addition, the nature of the problem supplies a motivation to combine these prior art references. The district court provided a detailed analysis of the nature of the problem solved by the invention. Princeton Biochemicals, Inc.,

2004 WL 1398227, at *37-40. The problem was lengthening and securing the capillaries on the Honda automatic device to produce better separation. Id. at *38. The prior art Lukacs thesis stated that lengthening was precisely the reason for coiling. Id. at *39. With regard to securing, Dr. Osborne, a Beckman witness, testified about the problem of a capillary electrophoresis device whose capillary swayed during use and affected the separation result. Id. Dr. Osborne observed: "[W]e did not want the capillary to move during the separation." Id. In other words, the nature of the problem called for exactly the solutions in the prior art. Moreover the nature of the problem, as noted again in Dr. Jorgenson's testimony, called for the combination. Dr. Jorgenson observed that the problem called for coiled electrophoresis tubes, including capillary tubes, secured in place in a variety of ways. Id. He also testified that one of ordinary skill in the art at the time of the invention would know to coil a capillary to save space. Id. Regarding the securing of a capillary tube to a support member, Dr. Jorgenson also testified that it would be obvious to one of ordinary skill in the art to do so, as "you don't want a coil floating around without some kind of support." Id. Thus, the nature of the problem also supplies a motivation to make this combination of closely related prior art elements.

The district court also properly found that the references for this obviousness analysis were proper prior art. A reference is appropriate prior art if within the field of the inventor's endeavor. Bausch & Lomb, Inc. v. Barnes-Hind/Hydrocurve, Inc., 796 F.2d 443, 449 (Fed. Cir. 1986). Alternatively, a reference qualifies as prior art if "reasonably pertinent to the particular problem

with which the inventor was involved." Id. "A reference is reasonably pertinent if, even though it may be in a different field of endeavor, it is one which, because of the matter with which it deals, logically would have commended itself to an inventor's attention in considering his problem." In re GPAC Inc., 57 F.3d 1573, 1578 (Fed. Cir. 1995) (quotations and citations omitted). If a reference's disclosure relates to the same problem as the claimed invention, "that fact supports use of that reference in an obviousness rejection." In re Clay, 966 F.2d 656, 659 (Fed. Cir. 1992).

In this case, all the references for obviousness constitute analogous art, even though some of the references fall within the related field of liquid chromatography. Throughout the prosecution history of the '172 patent, the examiner consistently rejected elements one through six of claim 32 as obvious, citing references ranging from capillary electrophoresis to liquid chromatography - a related means of separating analytes. The examiner stated on the record: "[L]iquid chromatography and capillary electrophoresis are closely related techniques." The district court also itemized other references in the chemical separations field, describing the relation to electrophoretic separation or chromatography or both. Princeton Biochemicals, Inc., 2004 WL 1398227, at *36-37. The district court further established that capillary electrophoresis is closely related to the types of electrophoreses described in some of the references. Id. at *37. Finally, Dr. Jorgenson offered expert testimony that one of ordinary skill in the art would look to these related fields to solve problems in the field of capillary electrophoresis. Id. at *37.

The district court also examined whether the prior art references were reasonably pertinent to the particular problems with which the invention of claim 32 was involved. Id. at *37-39. In defining such problems, the district court looked to Dr. Guzman's own testimony that the electrophoretic device needed to be compact and immobile. Id. at *38. As already noted, the district court properly assessed that the prior art references addressed those same problems in the same way. Id. at *39. In sum, the district court used proper prior art references in its correct obviousness analysis.

Viewing the evidence as a whole and in a light most favorable to Princeton, this court agrees with the district court that there was not substantial evidence to support the jury verdict. Because claim 32 is invalid for obviousness, this court need not reach the issues of prior invention and infringement.

COSTS

Each party shall bear its own costs.

AFFIRMED

# UNITED STATES COURT OF APPEALS FOR THE FEDERAL CIRCUIT

### OPINION ANNOUNCING
### JUDGMENT OF THE COURT

OPINION FILED AND JUDGMENT ENTERED: 06/09/05

The attached opinion announcing the judgment of the court in your case was filed today.  The judgment was entered pursuant to Rule 36.  The mandate will be issued in due course.

Information is also provided about petitions for rehearing and suggestions for rehearing en banc.  The questions and answers are those frequently asked and answered by the Clerk's Office.

Each side shall bear its own costs.

Regarding exhibits and visual aids: Your attention is directed to FRAP 34(g) which states that the clerk may destroy or dispose of the exhibits if counsel does not reclaim them within a reasonable time after the clerk gives notice to remove them.  (The Clerk deems a reasonable time to be 15 days from the date the final mandate is issued.)

JAN HORBALY
Clerk

cc: WILLIAM G. TODD
    JOSEPH R. RE

PRINCETON BIOCHEM V BECKMAN COULTER, 04-1493
DCT - 3:96-CV-05541